# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

DANIEL LONGORIA, JR.,       )
                                     )
             Plaintiff,       )
                                     )      **Case No. 14-cv-70-TLW**
      vs.                   )
                                     )
ARTUR KHACHATRYAN, an     )
individual; SENTRY INSURANCE  )
COMPANY, a foreign insurance   )
company; HUSSAIN ABDULRLIDHA )
ALBANAWI, an individual; and BIG RIG )
AUTO TRANSPORT, INC., a foreign )
corporation;                    )
                                     )
            Defendants.     )

## OPINION AND ORDER

Before the Court is defendant Artur Khachatryan's motion to strike/motion in limine regarding the testimony of plaintiff's expert, Dr. A.E. Moorad. (Dkt. 56). Defendants Hussain Abdulrlidha Albanawi and Big Rig Auto Transport, Inc. have filed a joinder. (Dkt. 61). Defendants argue that Dr. Moorad's testimony should be excluded under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1992) for the following reasons: (1) Dr. Moorad is not qualified to testify as an expert witness; (2) Dr. Moorad will not be able to provide testimony that assists the trier of fact because his opinion is not relevant; (3) Dr. Moorad's opinion is not based upon sufficient facts; and (4) Dr. Moorad's opinion that plaintiff suffers chronic pain and requires a specific course of treatment is not based on any discernable methodology. Id. Alternatively, defendants seek to limit Dr. Moorad's testimony with respect to the following areas: (1) his opinions regarding plaintiff's mental conditions and needed treatment; (2) plaintiff's version of the accident, as he related it to Dr. Moorad; (3) Dr. Moorad's opinion as to the cause of plaintiff's injuries; (4) Dr. Moorad's opinion that plaintiff "cannot

function;" (5) the reasonableness of plaintiff's medical expenses; (6) plaintiff's credibility; and (7) plaintiff's sexual dysfunction. Id.

Plaintiff argues that Dr. Moorad has the education and experience to testify as an expert. (Dkt. 78). Plaintiff cites to the Oklahoma jury instructions on damages to argue that Dr. Moorad's testimony is relevant, including the extent of plaintiff's injuries, the cause of those injuries, and the cost to compensate him for those injuries. Id. Plaintiff challenges defendants' argument that Dr. Moorad did not have sufficient evidence of plaintiff's medical history to formulate an opinion about the injuries sustained in the accident. Id. Plaintiff also challenges defendants' claim that Dr. Moorad's opinions are not reliable. Id. On the motion in limine, plaintiff rejects any attempt to limit Dr. Moorad's testimony about the extent of plaintiff's injuries, arguing that Dr. Moorad is qualified to testify regarding all of plaintiff's injuries and the cost of care and that his opinions are relevant. Id.

## ANALYSIS

### Daubert

Federal Rule of Evidence 702 permits a qualified expert witness to testify and render an opinion when,

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1992), the Supreme Court held that the trial court serves a "gatekeeping"

function in determining what testimony is admissible under Rule 702. The trial court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." Dodge v. Cotter Corp., 328 F.3d 1212, 1221 (10th Cir. 2003).

The Tenth Circuit, applying Daubert, requires the proponent of expert testimony to establish that the expert used reliable methods to reach his or her conclusions and that the expert's opinion is based on a reliable factual basis. See Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1233 (10th Cir. 2004). The Tenth Circuit cited four factors that district courts should apply to make a reliability determination:

> (1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

Id. at 1233 (quoting Daubert, 509 U.S. at 593-94). The "trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." Id. Under Daubert, "'any step that renders the analysis unreliable ... renders the expert's testimony inadmissible. This conclusion is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'" Mitchell v. Gencorp Inc., 165 F.3d 778, 782 (10th Cir. 1999) (quoting In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)). The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound methodology and sufficient facts. See Dodge, 328 F.3d at 1222; Fed. R. Evid. 702 Advisory Committee Note to 2000 Amendments ("the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence").

**Qualification**

Defendants argue that there are five areas in which Dr. Moorad is not qualified to testify:
(1) the reasonableness of plaintiff's treatment for spinal injuries; (2) future treatment for plaintiff's
spinal injuries; (3) the reasonableness of plaintiff's medical expenses; (4) the cause of plaintiff's
injuries; and (5) plaintiff's mental health and associated future needs. (Dkt. 56). Defendants argue
that, because Dr. Moorad is not a surgeon or orthopedist specializing in treating spinal injuries, he
is not qualified to opine on the necessity and reasonableness of the treatment that plaintiff has
received. Id. Defendants also argue that Dr. Moorad's opinions regarding future treatment of
plaintiff's spinal injuries are speculative and that Dr. Moorad's training and experience are not
sufficient to allow this testimony. Id. Further, defendants contend that Dr. Moorad's experience
does not qualify him to opine on the cause of plaintiff's injuries or any mental or emotional
conditions that may require treatment. Id.

Plaintiff argues that Dr. Moorad's medical practice includes physical medicine,
occupational medicine, and internal medicine and that "[h]e is the medical director of several
INTEGRIS medical facilities, including" a rehabilitation hospital that "is widely recognized as
Oklahoma's premier rehabilitation facility for patients with severe spinal cord injuries." (Dkt. 78).
Plaintiff also argues that Dr. Moorad has treated patients with spinal injuries, both at the acute
injury phase and at the rehabilitative phase. Id. Plaintiff also notes that Dr. Moorad has previously
been qualified as an expert in spinal injuries in state, federal, and workers' compensation courts in
Oklahoma. Id.

Courts have broad discretion in determining the competency of an expert witness. See
Quinton v. Farmland Indus., Inc., 928 F.2d 335, 336 (10th Cir. 1991). Additionally, the Tenth
Circuit has specifically rejected the argument that a physician must be a specialist in a field to

4

testify about subjects related to that field. Id. (stating that "This assumption about the insufficiency of general medical study, which reflects the implausible view that such training qualifies a doctor to diagnose and treat a wide range of physical disorders in the real world but not to render expert opinions about particular examples in the courtroom, has been expressly rejected in the case of physicians."). Accordingly, defendants' argument that Dr. Moorad is not qualified to testify about plaintiff's spinal injuries simply because he is not an orthopedist or a surgeon is not persuasive.

However, the Tenth Circuit has also held that "merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue." Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 (10th Cir. 2001). To qualify as an expert, a physician must testify "within the reasonable confines of his subject area and cannot render expert opinions on an entirely different field or discipline." Wheeler v. John Deere Co., 935 F.2d 1090, 1100 (10th Cir.1991)).

Plaintiff has established that Dr. Moorad has the training and experience to opine on the status of plaintiff's spinal injury, based on his review of the medical records and his own examination of plaintiff. Plaintiff has also established that Dr. Moorad's training and experience qualifies him to testify regarding the reasonableness of the treatment plaintiff has already received for his spinal injury, as well as his recommendations that plaintiff be referred for additional treatment. On this point, Dr. Moorad's report recommends that plaintiff be referred for objective testing in the form of an MRI, CT/myelogram, EMG, and discogram[1]. (Dkt. 56-1). He then recommends additional treatment, but he lists those treatments as alternatives. If a surgeon

---

[1] Dr. Moorad's report does state that plaintiff will "probably" need a discogram. Dr. Moorad's testimony on this point may be subject to additional objections; however, with respect to his qualifications to testify about appropriate testing, the Court finds that Dr. Moorad is qualified to testify as an expert.

recommends surgery, plaintiff should receive it; however, if plaintiff is not a good surgical candidate, he will require epidural steroid injections and additional physical therapy. Id. Dr. Moorad's report implicitly admits that he does not have sufficient facts to recommend the appropriate course of treatment without the results of the additional testing. Accordingly, although Dr. Moorad is qualified to testify generally about future treatment, his own report limits his testimony in this case to the recommendation for additional testing.

Dr. Moorad is qualified to testify regarding the short-term treatment he recommended pending the outcome of the additional testing. Specifically, Dr. Moorad recommended a back brace for stability, physical therapy, and medication for pain management. Id.

Dr. Moorad's training and experience also qualifies him to testify as to the cause of plaintiff's spinal injury, subject to a finding that Dr. Moorad's opinion is based on sufficient facts and data, discussed *infra*. With respect to any mental or emotional conditions and with respect to plaintiff's sexual dysfunction, the Court finds that Dr. Moorad, as a physician, is qualified to conduct a basic screening to determine whether plaintiff needs a referral for additional testing and treatment, but Dr. Moorad is not qualified to testify whether plaintiff has developed these conditions as a result of the accident.

It is not clear whether Dr. Moorad's experience as a medical director and workers' compensation expert witness qualifies him to testify as to the reasonableness of the *expense* of plaintiff's treatment and testing (subject to the Court's rulings above). If, at trial, plaintiff can lay a foundation for that testimony, the Court will allow Dr. Moorad to testify on that issue.

**Assisting the Trier of Fact**

Defendants argue that Dr. Moorad's testimony fails to assist the trier of fact in two ways. First, defendants argue that Dr. Moorad's testimony as to plaintiff's injuries and past treatment

will be cumulative because "[p]laintiff's treating physicians will no doubt be presented at trial to discuss his alleged injuries and resulting treatment." That objection is an evidentiary objection to be resolved at trial.

Second, defendants argue that Dr. Moorad's opinion as to any necessary future treatment is speculative. As stated above, the Court agrees that Dr. Moorad's opinion about whether plaintiff will require surgery or additional conservative treatment is speculative and would not assist the trier of fact for the reason that Dr. Moorad is not qualified to testify in those areas.

**Sufficient Facts or Data**

Defendants contend that Dr. Moorad does not have sufficient facts upon which to base his opinion that the accident caused all of plaintiff's alleged injuries or that plaintiff's treatment was necessary and the costs reasonable. (Dkt. 54). Defendants argue that Dr. Moorad should have reviewed medical records pre-dating the accident in order to formulate a proper opinion of those issues. Id. Plaintiff argues that Dr. Moorad asked plaintiff about his prior medical history during Dr. Moorad's single examination of plaintiff. (Dkt. 78). Plaintiff reported that he did not have any injuries to his neck, back, or shoulders prior to the accident, and Dr. Moorad relied upon plaintiff's report. Id.

Rule 702(b) requires an expert's opinion to be based on "sufficient facts and data." The Tenth Circuit has held that Daubert does not govern this issue because, "[b]y its terms, the Daubert opinion applies only to the qualifications of an expert and the methodology or reasoning used to render an expert opinion" and "generally does not, however, regulate the underlying facts or data that an expert relies on when forming her opinion." United States v. Lauder, 409 F.3d 1254, 1264 (10th Cir. 2005). In assessing the sufficiency of the facts, the trial court should conduct "a quantitative rather than qualitative analysis." Fed. R. Evid. 702 Advisory Committee Note to 2000

Amendments. As another court has held, "the Court does not examine whether the facts obtained by the witness are themselves reliable – whether the facts used are qualitatively reliable is a question of the *weight* to be given the opinion by the factfinder, not the *admissibility* of the opinion." United States v. Crabbe, 556 F.Supp.2d 1217, 1223 (D.Colo. 2008) (emphasis in original). Accordingly, the trial court should limit its inquiry under Rule 702(b) to "whether the witness obtained the amount of data that the methodology itself demands." Id.

Whether Dr. Moorad should have reviewed plaintiff's past medical records as opposed to relying solely upon plaintiff's self-report is a question of weight, not admissibility.

**Reliability**

Defendants argue that Dr. Moorad's methodology is not reliable because his sources for reference in developing a treatment plan for plaintiff – the Official Disability Guidelines, the Opiate Treatment Guidelines written by the American Academy of Pain Medicine, and the Oklahoma Guidelines for Treatment of Chronic Pain Disorders – are not clearly applicable to plaintiff's injuries. (Dkt. 56). Defendants argue that "it has not been shown that Plaintiff suffers from chronic pain or that such guidelines are applicable in this matter." Id. Defendants argue that Dr. Moorad does not identify the methodology he employed in assessing future treatment for plaintiff's spinal injury. Plaintiff argues that Dr. Moorad's opinion is based, in large part on the objective medical testing (CT scans, myelograms, and MRIs). (Dkt. 78).

The Court has already determined that Dr. Moorad's testimony regarding future treatment is limited to his recommendations for additional testing. With respect to Dr. Moorad's recommendations for pain medication, the Court finds that Dr. Moorad's report establishes that plaintiff suffers from a condition that would cause pain. Defendants do not challenge the legitimacy of the publications upon which Dr. Moorad relies, only the question of whether such

resources are relevant to plaintiff's treatment. The Court finds that these publications, to the extent they address issues of pain, are relevant. Thus, Dr. Moorad may testify regarding plaintiff's current need for pain medication. Whether or not he is allowed to testify regarding the need for future pain medication will be addressed at the trial and outside the presence of the jury.

**Scope of Dr. Moorad's Testimony Under <u>Daubert</u>**

For these reasons, under <u>Daubert</u>, Dr. Moorad is qualified to testify as an expert witness, but the scope of his testimony is limited as follows:

1) Dr. Moorad may testify as to plaintiff's spinal injuries, the reasonableness and necessity of the treatment plaintiff has already received, and the need for additional testing;

2) Dr. Moorad may testify to the short-term treatment that he recommended for plaintiff pending the outcome of the additional testing;

3) Dr. Moorad may testify as to the reasonableness of the *cost* of the treatment plaintiff has received, subject to the presentation of evidence at trial that lays a foundation for Dr. Moorad's expertise in the area of medical expenses;

4) Dr. Moorad may testify as to the cause of plaintiff's spinal injury;

5) Dr. Moorad may testify that plaintiff needs referrals for depression, subject to evidence presented at trial that plaintiff's depression stems from the accident;

6) Dr. Moorad may testify that plaintiff needs a referral for sexual dysfunction, subject to evidence presented at trial that plaintiff's sexual dysfunction stems from the accident; and

7) Dr. Moorad may not give his opinion regarding the necessity of any future course of treatment for plaintiff's spinal injury, depression, or sexual dysfunction.

8) Dr. Moorad may testify regarding plaintiff's current need for pain medication. Whether or not he is allowed to testify regarding the need for future pain medication will be addressed at the trial and outside the presence of the jury.

## Motion in Limine

Defendants also raise numerous evidentiary challenges to Dr. Moorad's testimony.

### Plaintiff's Past, Present, and Future Mental and Emotional Conditions

Defendants repeat their Daubert arguments that Dr. Moorad's opinion regarding plaintiff's mental and emotional health and need for treatment is not proper. (Dkt. 56). The Court has already ruled that, subject to evidence that plaintiff's depression is the result of the accident, Dr. Moorad is qualified to testify, as a physician, that he believed plaintiff was depressed and needed a referral for diagnosis and possible treatment. Defendants raise no new arguments that would further limit Dr. Moorad's testimony on this issue.

### Plaintiff's Version of the Facts Surrounding the Accident

Defendants argue that Dr. Moorad's testimony regarding what plaintiff told him about the cause of the accident is cumulative and inadmissible hearsay. (Dkt. 56). Plaintiff stipulates that this testimony should be excluded.[2] (Dkt. 78). The Court agrees that plaintiff's statements to Dr. Moorad do not qualify as an exception to the hearsay rule because there is no indication that plaintiff's statements to Dr. Moorad, as they are set forth in the report, were made for the purpose

---

[2] Plaintiff also argues, however, that if his version of events, as relayed to Dr. Moorad, are excluded from Dr. Moorad's testimony, "then all statements in the medical records about how the collision occurred must be excluded." (Dkt. 78). Whether a particular statement made to a physician is admissible under a hearsay exception (e.g., Federal Rule of Evidence 803(4)) will be determined on a case-by-case basis. Even if plaintiff had raised this issue in a proper motion in limine as opposed to a response brief, the Court declines to enter a blanket order on this issue.

of seeking treatment or are otherwise pertinent to plaintiff's diagnosis or treatment. See Fed. R. Evid. 803(4).

### Cause of Plaintiff's Injuries

Defendants argue that Dr. Moorad should not be permitted to testify regarding the cause of plaintiff's injuries because he lacks the "training, experience, or sufficient factual awareness" to render such an opinion. (Dkt. 56). Plaintiff argues that Dr. Moorad is qualified by training and experience to testify as to the cause of plaintiff's injuries.

As discussed, *supra*, the Court finds that Dr. Moorad has the necessary medical training and experience to opine generally on whether plaintiff's spinal injuries were caused by the accident if that opinion is based on sufficient facts and data. Defendants have presented no additional argument to warrant further limitation of Dr. Moorad's testimony.

### Testimony that Plaintiff Cannot Function

Defendants argue that Dr. Moorad should be prevented from opining that plaintiff cannot function. (Dkt. 56). Defendants argue that this opinion conflicts with plaintiff's deposition testimony and evidence that plaintiff's application for Social Security disability benefits was denied. Id. Defendants contend that any testimony from Dr. Moorad that plaintiff is unable to function will be nothing more than an emotional appeal to the jury and is inadmissible under Federal Rules of Evidence 402 and 403. Id.

Plaintiff argues that the statement in Dr. Moorad's report is simply a recitation of plaintiff's description of his symptoms and should be admissible. (R. 78).

The statement in Dr. Moorad's report is part of a description of plaintiff's self-report and reads as follows: "He is in constant pain and can not [sic] function." (Dkt. 56-1). It is unclear whether this statement is one that plaintiff made or a conclusion that Dr. Moorad reached. If it is

the former, then the first part of plaintiff's statement (that he is in constant pain) would constitute a statement of "past or present symptoms or sensations" admissible under Federal Rule of Evidence 803(4) because it is the type of statement on which a physician would reasonably rely in determining a treatment or diagnosis.[3] As to the statement that plaintiff "cannot function," the Court will defer a decision until trial. The context of this statement is unclear, and the statement itself is extremely broad and seems less likely to be a statement of "symptoms or sensation."

If the statement is a conclusion of Dr. Moorad, it so general that the Court is unable to determine whether it is admissible. The phrase "cannot function" by itself has no context as a medical opinion. Accordingly, the Court will also address this issue at trial.

### Reasonableness and Necessity of Plaintiff's Medical Expenses

Defendants argue that Dr. Moorad is not qualified to testify that plaintiff's medical expenses were "appropriate, necessary and directly related to this accident." (Dkt. 56). Defendants also argue that Dr. Moorad's opinion regarding plaintiff's medical expenses is not supported by any facts or methodology. Id. Alternatively, defendants contend that any such opinion would be prejudicial and cumulative. Id. Plaintiff argues that Dr. Moorad is qualified to testify as to the

---

[3] On this issue, the 1972 Advisory Committee Notes to the Federal Rules of Evidence state, "Conventional doctrine has excluded from the hearsay exception, as not within its guarantee of truthfulness, statements to a physician consulted only for the purpose of enabling him to testify. While these statements were not admissible as substantive evidence, the expert was allowed to state the basis of his opinion, including statements of this kind. The distinction thus called for was one most unlikely to be made by juries. The rule accordingly rejects the limitation. This position is consistent with the provision of Rule 703 that the facts on which expert testimony is based need not be admissible in evidence if of a kind ordinarily relied upon by experts in the field." See also U.S. v. Farley, 992 F.2d 1122, 1125 (10th Cir. 1993) ("Rule 803(4) 'abolished the [common-law] distinction between the doctor who is consulted for the purpose of treatment and an examination for the purpose of diagnosis only: the latter usually refers to a doctor who is consulted only in order to testify as a witness.'") (quoting Morgan v. Foretich, 846 F.2d 941, 950 (4th Cir. 1988)).

necessity of plaintiff's treatment. (Dkt. 78). Plaintiff also contends that Dr. Moorad is familiar with local billing practices and can testify as to the reasonableness of the medical costs. Id.

Defendants are merely repeating the arguments they raised in their Daubert motion. Again, the Court already has determined that Dr. Moorad has the necessary medical training and experience to opine generally on whether plaintiff's spinal injuries were caused by the accident if that opinion is based on sufficient facts and data. Whether Dr. Moorad's experience as a medical director and workers' compensation expert witness qualifies him to testify as to the reasonableness of the *expense* of plaintiff's treatment is not clear from his report and CV. If, at trial, plaintiff can lay a foundation for that testimony, the Court will allow Dr. Moorad to testify on that issue.

With respect to defendants' argument that Dr. Moorad's testimony would be cumulative, defendants do not state what other testimony will be presented that would render Dr. Moorad's testimony cumulative. Accordingly, the Court finds no reason to limit Dr. Moorad's testimony on this ground.

### Plaintiff's Credibility

Defendants argue that Dr. Moorad should be prevented from testifying that plaintiff is credible, as the question of witness credibility lies with the trier of fact. (Dkt. 56). Plaintiff agrees but argues that Dr. Moorad should be able to testify whether plaintiff's complaints and report of symptoms is consistent with the objective medical evidence. (Dkt. 78). Neither party cites case law to support its position. The Court is inclined to allow Dr. Moorad to testify that plaintiff's complaints and reported symptoms are, or are not, consistent with the objective medical evidence. Doing so is merely part of the process of rendering a diagnosis or determining whether plaintiff's past treatment was reasonable.

**Plaintiff's Sexual Dysfunction**

Defendants argue that Dr. Moorad should not be permitted to testify regarding plaintiff's past, present, or future sexual dysfunction because he does not have the training or experience to opine on the matter and because he does not have sufficient information to render the opinion. (Dkt. 56). Defendants also argue that the testimony would be irrelevant, prejudicial, and misleading. Id. Plaintiff argues that Dr. Moorad is qualified to recognize the symptoms of sexual dysfunction and recommend a referral to a specialist. (Dkt. 78).

As the Court has previously found, Dr. Moorad may testify that plaintiff needs a referral for sexual dysfunction, subject to evidence presented at trial that plaintiff's sexual dysfunction stems from the accident. Defendants have presented no new arguments to further limit Dr. Moorad's testimony.

**Further Limitations on Dr. Moorad's Testimony**

Based on the arguments presented by defendant, the Court finds that Dr. Moorad's testimony should be limited as follows:

1) Dr. Moorad may not testify as to plaintiff's version of the events surrounding the accident.

2) Dr. Moorad may testify whether plaintiff's complaints and symptoms are consistent with the objective medical evidence, but he may not opine on plaintiff's credibility.

Any remaining issues will be addressed at trial.

## CONCLUSION

As set forth in this order, defendants' Daubert motion/motion in limine and joinder (dkt. 56, 61) are GRANTED IN PART and DENIED IN PART.

SO ORDERED this 30th day of September, 2016.

T. Lane Wilson
United States Magistrate Judge