## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

DANIEL LONGORIA, JR.,      )
                 )
        Plaintiff,     )
                 )
      vs.          )      Case No. 14-cv-70-TLW
                 )
ARTUR KHACHATRYAN, an    )
individual; SENTRY INSURANCE )
COMPANY, a foreign insurance  )
company; HUSSAIN ABDULRLIDHA )
ALBANAWI, an individual; and BIG RIG )
AUTO TRANSPORT, INC., a foreign )
corporation;          )
                 )
        Defendants.  )

### OPINION AND ORDER

Before the Court is defendant Artur Khachatryan's ("Khachatryan") motion to strike/motion in limine regarding the testimony of plaintiff's expert, Lon Huff. (Dkt. 57). Defendants Hussain Abdulrlidha Albanawi ("Albanawi") and Big Rig Auto Transport, Inc. ("Big Rig" have filed a joinder. (Dkt. 60). Defendants argue that Huff's testimony should be excluded under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1992) for the following reasons: (1) it includes medical opinions that Huff is not qualified to give; and (2) is not based on facts and ignores evidence of plaintiff's past earnings and anticipated future medical expenses. (Dkt. 57).

### ANALYSIS

### Daubert

Federal Rule of Evidence 702 permits a qualified expert witness to testify and render an opinion when,

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1992), the Supreme Court held that the trial court serves a "gatekeeping" function in determining what testimony is admissible under Rule 702. The trial court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." Dodge v. Cotter Corp., 328 F.3d 1212, 1221 (10th Cir. 2003).

The Tenth Circuit, applying Daubert, requires the proponent of expert testimony to establish that the expert used reliable methods to reach his or her conclusions and that the expert's opinion is based on a reliable factual basis. See Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1233 (10th Cir. 2004). The Tenth Circuit cited four factors that district courts should apply to make a reliability determination:

(1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

Id. at 1233 (quoting Daubert, 509 U.S. at 593-94). The "trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." Id. Under Daubert, "'any step that renders the analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'" Mitchell v. Gencorp Inc., 165 F.3d 778,

782 (10th Cir. 1999) (quoting In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)). The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound methodology and sufficient facts. See Dodge, 328 F.3d at 1222; Fed. R. Evid. 702 Advisory Committee Note to 2000 Amendments ("the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence").

**Qualification**

Defendants argue that Huff improperly gives medical opinions about plaintiff's condition and his future medical needs, despite the fact that he has no medical training. (Dkt. 57). Defendants argue that Huff bases his opinion on Dr. Moorad's report, which contradicts the findings of plaintiff's own treating physicians. Id. Defendants also argue that by relying on Dr. Moorad's report, Huff reaches the improper conclusion that plaintiff is limited to sedentary work. Id. Intelligence testing that Huff performed also found limits that defendants find objectionable, arguing that it is unclear how Huff's experience in vocational evaluations qualifies him to perform such testing. Id.

Plaintiff argues that Huff is not opining on plaintiff's medical issues but is merely relying on the opinions of plaintiff's treating physicians and the report of Dr. Moorad as a basis for establishing plaintiff's treatment history and need for future care. (Dkt. 79). Plaintiff also contends that defendants' objections to Huff's vocational evaluation ignore Huff's entire CV. Id.

As an initial matter, the Court finds that Huff's report does not indicate that Huff has rendered any medical opinion. (Dkt. 79-2). The report summarizes plaintiff's past medical treatment and then relies on Dr. Moorad's report to assess plaintiff's need for future medical treatment. Id.

3

Huff relies on those medical opinions to find that plaintiff is not capable of returning to work. See Fed. R. Evid. 703 (permitting an expert to rely on other expert opinions if that expert "would reasonably rely on those kinds of facts or data in forming an opinion on the subject"). Huff's reliance on the opinions of plaintiff's treating physicians and expert witness are reasonable. Whether those opinions provide a sufficient basis for Huff's determination that plaintiff cannot return to work is a question of the sufficiency of the data, not a question of Huff's qualifications.

Huff's area of expertise is vocational evaluation and rehabilitation, including conducting vocational testing, preparing medical care plans, and calculating earning potential. (Dkt. 57-2). The Court finds that Huff is qualified to give an opinion in those areas, and his opinions on the intelligence testing performed and its impact on plaintiff's likelihood of success in vocational training fall within those areas of expertise.

**Assisting the Trier of Fact**

Defendants argue that Huff's opinion will not be helpful to a jury insofar as it constitutes a "regurgitation" of Dr. Moorad's opinions. (Dkt. 57). Because the Court finds that Huff is not offering a medical opinion and is only relying on that opinion as a basis for his own opinion regarding the calculation of damages for plaintiff's future medical needs, the Court also finds that Huff's opinion would assist a jury in calculating damages. However, Huff's ability to testify as to plaintiff's future medical costs is limited as discussed *infra*.

**Sufficiency of Facts or Data**

Defendants object to Huff's reliance on Dr. Moorad's opinion, arguing that Huff should have contacted plaintiff's treating physicians to determine any necessary future medical treatment. (Dkt. 57). Defendants also contend that Huff's report, namely his calculations for future medical expenses, are based on facts that were not disclosed in Dr. Moorad's expert report. Id. In some

instances, plaintiff cites to consultations with Dr. Moorad, but in other areas – such as the need to repeat diagnostic testing every five years – defendants argue that Huff has no factual basis to defend the necessity of those costs. Id. Defendants also object to Huff's pricing of medications, arguing that a list from Walgreen's is insufficient. Id. Defendants further contend that Huff provides no basis at all for the cost of diagnostic tests and therapies or their frequency. Id.

Plaintiff's response focuses on Huff's calculation of lost earnings and does not address defendants' argument. (Dkt. 79).

Contrary to defendants' assertions, Huff does not rely selectively on any one medical opinion in concluding that plaintiff is not able to return to work. Huff cites to Dr. Trinidad's opinion that plaintiff is "100% totally and permanently disabled on an economic basis." (Dkt. 57-2). Huff also notes Dr. Gaede's twenty-five pound lifting restriction with no twisting and finds that, in conjunction with the results of Huff's own testing and plaintiff's age, plaintiff would not be a good candidate for vocational rehabilitation. Id. Huff's reliance on Dr. Moorad's opinion is limited to the issues of future medical treatment and future medical costs. Id.

Rule 702(b) requires an expert's opinion to be based on "sufficient facts and data." The Tenth Circuit has held that Daubert does not govern this issue because, "[b]y its terms, the Daubert opinion applies only to the qualifications of an expert and the methodology or reasoning used to render an expert opinion" and "generally does not, however, regulate the underlying facts or data that an expert relies on when forming her opinion." United States v. Lauder, 409 F.3d 1254, 1264 (10th Cir. 2005). In assessing the sufficiency of the facts, the trial court should conduct "a quantitative rather than qualitative analysis." Fed. R. Evid. 702 Advisory Committee Note to 2000 Amendments. As another court has held, "the Court does not examine whether the facts obtained by the witness are themselves reliable – whether the facts used are qualitatively reliable is a

question of the *weight* to be given the opinion by the factfinder, not the *admissibility* of the opinion." United States v. Crabbe, 556 F.Supp.2d 1217, 1223 (D.Colo. 2008) (emphasis in original). Accordingly, the trial court should limit its inquiry under Rule 702(b) to "whether the witness obtained the amount of data that the methodology itself demands." Id.

Dr. Moorad's opinion is the only expert opinion regarding future medical treatment and costs. To the extent that defendants are arguing that Huff should have contacted plaintiff's treating physicians, that argument goes to the qualitative analysis of the facts rather than their quantity. Therefore, Huff's reliance on Dr. Moorad's opinion goes to the weight of the evidence rather than its admissibility.

However, defendants sought to limit or exclude Dr. Moorad's testimony, and in a separate order (entered on the same date as this one), the Court imposed limitations on the scope of Dr. Moorad's testimony. Insofar as Huff's opinion relies on Dr. Moorad's report (and anticipated testimony), Huff's testimony is also limited. Specifically, the Court determined that Dr. Moorad's opinion regarding any future treatment was limited to the expense of the referrals he stated were necessary to assess plaintiff's future needs. Id. Also, Dr. Moorad's referrals for depression and sexual dysfunction were subject to foundational evidence that the accident caused those conditions. Id.

As to Huff's reliance on Walgreen's to provide a cost basis for future medications, the Court finds such reliance, at least as presented, insufficient. Huff has not presented any verifiable information regarding these costs, other than his statement that he contacted Walgreen's, which the Court deems insufficient. In order for Huff to rely on an estimate from a third party pharmacy, the Court would need more indicia of reliability, possibly documentary evidence of costs with an affidavit or declaration supporting those costs. In addition, as to the cost of future testing, it is

6

unclear how Huff arrived at his estimates. Accordingly, the medication and testing figures are not supported by sufficiently reliable data and Huff cannot provide testimony based on those figures.

### Methodology

Defendants object to Huff's use of intelligence testing as a means of calculating plaintiff's loss of earning potential. (Dkt. 57). Defendants contend that there is no evidence in Huff's report that explains whether these tests "are scientifically sound or medically accepted" in the context of lost earning potential. Id.

Plaintiff argues that the tests Huff administered are widely known for assessing intelligence and that Huff then used that information to assess the likelihood that plaintiff would be successful in rehabilitation training. (Dkt. 79).

The Court finds that the connection between the tests Huff conducted and the question of lost earnings resulting from plaintiff's inability to return to work is clear and within the scope of Huff's expertise. Of course, Huff will need to establish at trial that the tests he administered are generally used by experts in the field to assess intelligence. In addition, plaintiff will need to establish that there is medical evidence which lays a foundation for Huff's conclusion that, due to the accident, plaintiff cannot perform more than sedentary work.

### Motion in Limine

Defendants raise two issues in the motion in limine: (1) that Huff should be prohibited from offering medical opinion evidence; and (2) that Huff should be prohibited from testifying that plaintiff cannot return to full-time employment. These issues have been addressed in defendants' Daubert arguments.

Defendants also argue that any information in Huff's report based on conversations between Huff and Dr. Moorad should be excluded under Federal Rule of Evidence 802 because

the facts Dr. Moorad related to Huff are not included in Dr. Moorad's expert report. First, the issue is not one of potential hearsay since an expert witness can rely on information which would not otherwise be admissible at trial.

Second, Huff's report indicates that he obtained the following information used in his report from private consultations with Dr. Moorad: (1) the frequency of diagnostic testing such as MRIs and CT scans; and (2) prescriptions that Dr. Moorad would recommend plaintiff take to address his pain, spinal injury, and depression. The Court has limited Dr. Moorad's testimony regarding future treatment to the short-term use of pain medication, physical therapy, and a back brace and the cost of the referrals for surgery and potentially for depression and sexual dysfunction.[1] All of this information, except for the specific medications to be prescribed, are contained in Dr. Moorad's expert report. Nonetheless, the medications are listed in Huff's report, which was provided to defendants prior to his deposition and prior to Dr. Moorad's deposition. Thus, the Court sees no unfair prejudice to defendants arising out of testimony by Huff regarding the cost of current and short term medications which are included in his expert report.

## CONCLUSION

As set forth above, defendants' Daubert motion/motion in limine and joinder (dkt. 57, 60) are GRANTED IN PART and DENIED IN PART. Huff's testimony, to the extent that it relies on Dr. Moorad's opinion is limited to the scope of Dr. Moorad's testimony as the Court has defined it in the order on defendants' Daubert motion/motion in limine. (Dkt. 124). Huff's testimony regarding plaintiff's lost earning potential is admissible subject to a proper foundation, as discussed above.

---

[1] To the extent that Huff relies on Dr. Moorad's opinions, Huff will be so limited as well.

8

SO ORDERED this 30th day of September, 2016.


T. Lane Wilson
United States Magistrate Judge